## ELIZABETH BATEMAN v. SAMUEL RUTH, JR.

In an action for injuries sustained by falling into a sewer, in course of construction in a public street, held, that although the plaintiff previously knew that the sewer was being constructed, yet in the absence of any guard light or other special notice sufficient to call her attention to the hazard she ran, she was not guilty of contributory negligence in attempting to cross the street.

In an action against a contractor for injuries caused by the plaintiff's falling into an exavation made in a public street, insufficiently guarded and lighted, it is a question of fact for the jury to determine, on conflicting testimony, whether at the time of the accident the excavation was without a sufficient guard or light.

It is also a question for the jury in such a case, under proper instruction by the court, whether the plaintiff was guilty of contributory negligence. Where such a question is involved, and the jury were properly instructed, it must be

a very clear case, in which the court will set aside the verdict as erroneous and substitute its own judgment for that of the jury. It should be so clear as to lead the judicial mind to the conviction that the jury must have been influenced by prejudice, or carried away by the advocacy of counsel, or by some other cause, from the consideration of the facts.

APPEAL from a judgment of the Marine Court.

This action was brought for injuries sustained by the plaintiff, by falling into a sewer in the course of construction, while attempting to cross Seventh avenue, at or near the intersection of Twenty-fourth street, on the 27th December, 1869, about seven o'clock, P. M. The complaint alleged that such injuries were due to the defendant's negligence in not having the excavation properly guarded and in not having signal lights to denote its existence and whereabouts.

The defendant admitted in his answer that the sewer was open; that the defendant was engaged at the time in the construction of the sewer; that Seventh avenue was and is a public avenue or street; but denied that defendant was guilty of any negligence, and averred that the injuries received by the plaintiff were due to her negligence, and that her want of care contributed to the damage. The case was tried on the 5th day of April, 1870, before Mr. Justice Gross and a jury.

It appeared on the trial from plaintiff's testimony that she was in the habit of crossing Seventh avenue, on Twenty-fourth street, several times a week; knew of the sewer excavation (which had been in the same condition for several weeks), and had known it for some time; that there had never been any planks across the excavation at the crossing, and the crossing was disused; the other crossings were clear; the plaintiff by reason of the piles of stone and earth had frequently gone around the other way or over the pile of earth or "anglewise" through the stones, and that it was a dark, misty night, and the plaintiff was carrying a basket and a raised umbrella. The defendant produced evidence that the place was guarded. The jury found for the plaintiff, and from the judgment the defendant appealed to this court.

*Pinckney & Spink*, for appellant.

*T. B. Swift and Benjamin A. Willis*, for respondent.

BY THE COURT.*—ROBINSON, J.—This court, upon the argument, disposed of several exceptions taken by the defendant in the course of the trial, and the only point left for decision, is whether upon the case presented by the pleadings and evidence offered on the part of the plaintiff, she failed to establish any right of recovery.   When she closed her testimony, it appeared that the defendant was the contractor for building a sewer in Seventh avenue, and had in the progress of the work excavated a deep trench in the Seventh avenue, across Twenty-fourth street; that on the night of the 27th of December, 1869, the plaintiff had occasion to cross the avenue from the east to the west side, on the line of the sidewalk, on the northerly side of Twenty-fourth street; that the excavation across which she attempted to pass, was at the time of the accident unprovided with any bridge or covering over or upon which foot passengers could walk; that it was unprotected by any guard or other obstruction to prevent them from walking into it, and was unprovided with light sufficient to disclose the danger or hazard in attempting to cross it; that the night was wet, misty and dark, and the plaintiff, without knowledge or notice of the danger, walked into the excavation, and in her fall sustained serious injury.

The plaintiff, without special notice, had a right to walk the public street, in entire confidence that she might do so safely.   Although her attention may have been previously called to the fact that the sewer was in course of construction, if her attention had not been, immediately previous, called to the situation and condition of the street, where she attempted to cross the sewer, she was not called upon to anticipate that she might not do so safely, and in the absence of any guard or light disclosing the danger or any other especial notice sufficient to call her attention to the hazard she ran, she was justified in anticipating that she might cross the avenue without being exposed to the danger of falling into an open sewer.   The testimony produced on the part of the plaintiff, when the motion to dismiss the complaint was made, disclosed no imprudence or

want of reasonable precaution on her part, and the case, when the testimony was closed, was one of conflicting evidence, which it was the duty of the jury to weigh and decide upon the merits.

The several motions made to dismiss the complaint were properly denied, and the judgment should be affirmed.

At a subsequent term, a reargument of this appeal was had on motion of the appellant, and the judgment was reaffirmed with the following opinion.

BY THE COURT.*—DALY, CHIEF JUSTICE.—[After rehearsing the testimony.] It was for the jury to say, upon the evidence, whether the defendant had left the excavation without any barrier or light up to the time when the plaintiff fell into it upon the evening in question; for if he had, it was through his negligence that the accident happened, if the plaintiff was free from any negligence on her part.

There can be no doubt upon the evidence that the question of negligence on the defendant's part was a question for the jury, and their finding upon that point is conclusive.

The remaining question is whether there was cooperating negligence on the part of the plaintiff in crossing the avenue at this place upon a "wet, misty, dark and stormy" night, when she might have crossed with safety, if she had gone over from the northwest corner of 24th street to the southeast corner and from there to the southwest corner of 24th street.

The jury were instructed, that if they were satisfied that the plaintiff had in any manner, no matter in how small a degree, contributed by her own negligence to the accident, they might find for the defendant. This was all that the defendant could ask, and the jury have found by their verdict that she did not. The plaintiff swore positively that she knew nothing of the existence of this hole, nor even of the excavation on the westerly side of the avenue, though from its long continuance she was familiar with the excavation on the easterly

* Present—Daly, Ch. J. Loew and Robinson, JJ.

side which was then filled up; that she was in the habit of re-
marking the lamps as she passed along the streets, and that
there was no lamp or light of any kind to point out or warn
her of the danger. There was evidence that people did not
cross much at this place, and affirmative responses of "yes"
given by the boy to direct questions, put to him by the defend-
ant's counsel, to the effect, that no people, except boys at play,
went over on that side, but that they went over on the other side,
and did not pretend to go over there; to which, I apprehend,
the jury attached little weight, from the way in which the
questions were put and answered.

There was also evidence to show that the hole into which
the plaintiff fell was there some weeks before the accident, and
one of the defendant's witnesses testified that its situation was
such as to obstruct the crossing entirely at that corner, and an-
other, that there were no means of crossing there at all, which,
however, is to be taken in connection with the plaintiff's
testimony, that she had frequently crossed there, as often as
twice a week, and that she never saw this hole, or any opening
for the sewer on that side.

The rule in respect to contributory negligence is that the
plaintiff cannot recover, if by her own ordinary negligence or
wilful wrong she contributed to produce the accident. (Shear-
man & Redfield on Negligence, 23, 24, 25.)

The jury having been properly instructed and having
found, as we must assume, that the plaintiff had frequently
crossed that path before and had never seen the excavation,
and also, that there were neither barriers nor any light there to
warn her of the danger, I do not see how we can say as matter
of law, that they ought to have found for the defendant.

It has been held with especial reference to contributory negli-
gence, that one who passes an obstructed highway, is bound to
exercise ordinary care, which is defined to be such care as a
reasonably prudent man under the peculiar circumstances of
the case would exercise to preserve himself and property from
injury (*Penn. R. R. Co.* v. *Tighe,* 46 Penn. R. 316.), or that
degree of care which persons of ordinary prudence are ac-

customed to use and employ under the same or similar circumstances. (*Cleveland &c. R. R. Co.* v. *Terry*, 8 *Ohio St.* 570, 571.)

This test, the care which persons of ordinary prudence are accustomed to use under similar circumstances, is so indefinite and general, that the twelve men who sit in the jury box are quite as competent to judge of it as judicial officers.

What we denominate prudence, is that quality compounded of judgment and discretion, which enables a man to calculate in advance what he ought or ought not to do in respect to what is right or wrong, or with respect to his own best interests in the practical affairs of life, and whether there was a fair and ordinary exercise of this in a given state of circumstances is, in the great majority of cases, more or less a matter of opinion. It is a matter in respect to which the bulk of mankind are competent to form a judgment, and in respect to which the united judgment of the jury one way or the other is quite as likely to be right, as that of the judges who sit upon the bench. The case, therefore, must be a very clear one, in which the court, where such a question is involved and the jury have been properly instructed, would be warranted in setting aside the verdict as erroneous, and substituting its own judgment for that of the jury. (*Ireland* v. *The Oswego R. R. Co.* 13 N. Y. 533; *Keller* v. *The N. Y. Central R. R. Co.* 24 How. Pr. 177; *Dickens* v. *The Same*, 38 N. Y. 12, 2; *Lamb* v. *Camden &c. R. R. Co.* 2 Daly, 45.)

It should be so clear as to lead the judicial mind to the conviction that the jury must have been influenced by prejudice, or carried away by the advocacy of counsel, or by some other cause, from the consideration of the facts.

In *Clayards* v. *Dethick*, (12 Ad. & E. N. S. 439), a case in some of its features resembling the present, a trench had been dug for the construction of a sewer, beneath the only outlet from a stable, leaving only a narrow passage which was heaped up with rubbish to the height of about four feet. In the afternoon the plaintiff was bringing one of his horses out of the stable and was about putting down planks for the purpose of getting him over the narrow space which was least obstructed, when one of the defendants said that he would not be

answerable for anything that happened by taking the horse over in that manner, to take him over on the other side and that he would be answerable, and the plaintiff then, with assistance, led the horse safely over the gravel.

In the evening he attempted, neither of the defendants being there, to get another horse out in the same direction.

The defendants' men cautioned him not to make the attempt, as it might endanger the horse, but he did so, when the rubbish gave way and the horse fell into the trench. The case was left to the jury who found for the plaintiff, and upon error, it was held by all the judges, that upon this state of facts, it was for the jury to determine whether the plaintiff had acted as a man of ordinary prudence would have done, and they refused to set aside the verdict. "If the danger was so great," said Patterson, J., "that no sensible man would have incurred it, the verdict must be for the defendants, and the case was rightly put to the jury as depending on that question," adverting at the same time to the circumstances analogous to the one in this case, that he had previously carried a horse over the same place in safety.

So, in the present case, it was for the jury to determine under all the circumstances, whether it was or was not an act of negligence, or a want of ordinary care, for the plaintiff to cross at that place, at that time, and in the manner in which she did, and as they have found that it was not, their verdict should be left undisturbed.

The defendant requested the judge to charge that, if from the evidence the jury found that the plaintiff knew of the excavation on this crossing, and that it was not used, then her attempting to cross there in the night was an act of negligence. The judge did not charge as requested, but told the jury that if the plaintiff was aware of the fact that there was a sewer then being constructed, and used no precaution in approaching so dangerous a spot, that then it was for them to say whether there was any negligence on her part or not. There was no foundation in the evidence for this request, nor even for the proposition which the judge submitted, for the plaintiff swore positively that she knew nothing of the construction of a sewer

on the westerly side of the avenue, or of the existence of this excavation, and there was nothing in the evidence to show, or which tended to show that she did.

The judge left the whole question of the existence or not of negligence on her part to the jury, and it was precisely one of those cases in which it was proper in my judgment to do so. (*Dickens* v. *N. Y. Central R. R. Co.* 38 N. Y. 21; *Johnson* v. *Hudson River R. R. Co.* 20 N. Y. 65; *Ernst* v. *Hudson River R. R. Co.* 35 N. Y. 9; *Lamb* v. *The Camden & Amboy R. R. Co.* 2 Daly, 465, 466, 467, 468; *Ireland* v. *The Oswego &c. R. R. Co.* 13 N. Y. 533; *Weed* v. *Hartman,* 29 N. Y. 591; *Bernhardt* v. *Ren. & Saratoga R. R. Co.* 32 Barb. 165; *Keller* v. *N. Y. Central R. R. Co.* 24 How. Pr. 172; *Beers* v. *Housatonic R. R. Co.,* 19 Conn. 566; *Phila. R. R. Co.* v. *Spearan,* 47 Penn. St. 300; *Chapman* v. *Parlane,* 3 S. D. 585, Hay, 29; *Munroe* v. *Leach,* 7 Metc. 274; *McGrath* v. *Hudson R. R. Co.* 19 How. Pr. 214; *Phillips* v. *Rens. &c. R. R. Co.* 57 Barb. 644.)

The two objections to questions were disposed of upon the argument and we have nothing to add to what was then said respecting them.

The judgment should be affirmed.

Judgment affirmed.