ISBELL *vs.* NEW YORK AND NEW HAVEN RAILROAD CO.

The qualities of an object in dispute, may be shown by a comparison thereof with the known qualities of some object not in dispute; and evidence directed to such a comparison is not inadmissible as irrelevant or as tending to raise collateral issues.

A witness having testified as to the condition at a former time of a certain fence, its condition at such former time being the subject of controversy, was asked on cross-examination as to the present condition of a certain neighboring fence, for the purpose of instituting a comparison between the present condition of the one and the former condition of the other. Held, that such inquiry was within the foregoing rule and proper.

A record by a town clerk of the proceedings of a town meeting in enacting a by-law, authorized by statute to be enacted by towns at meetings specially warned for that purpose, stating that, at a special meeting of the inhabitants of the town, legally warned and held for the purpose of making the by-law in question, it was voted &c., is *prima facie* evidence that such meeting was specially warned for the purpose of making such by-law.

ACTION on the case, for the destruction of certain cattle of the plaintiff by the negligent act of the defendants in running over them with their cars.

The plaintiff in his declaration alleged that the cattle in question were at the time of the injury lawfully passing along the highway in the town of Milford, near the railroad of the defendants; that at the place where the injury occurred there was no fence between the highway and the road of the defendants, but that the space between was open and unin closed, and that it was the duty of the defendants to keep

and maintain a fence along their road, and between it and said intervening space, so as to prevent cattle from passing from the highway to the railroad, and that the want of such fence was owing to the negligence of the defendants. That at the time of the injury, the cattle in passing along the highway, came to said uninclosed space, and without the fault or knowledge of the plaintiff, and in obedience to their instincts, wandered in search of grass upon and across said intervening space to the railroad track, where by the careless and negligent management of the locomotive and cars of the defendants by the servants of the defendants in driving them over said road, the cattle were killed, &c.

The defendants pleaded the general issue, with notice that they should offer evidence to prove that the cattle, at the time of the alleged injury, were at large from the plaintiff's premises by his negligence and in consequence of his insufficient fences, and were permitted by the plaintiff to be at large, and to stray upon the public highways of said town of Milford, in violation of the by-laws of said town and of the laws of the state; said by-laws being set out in the notice.

The case was tried before the jury at the term of the superior court holden in New Haven county, in December, 1856.

It appeared on the trial that the cattle had escaped from a lot of the plaintiff, at some distance from the road of the defendants, into which they had been turned the evening before the injury; that the lot adjoined the highway, into which they had escaped, and which they had followed to the unenclosed space between the highway and the railroad, across which they passed to the railroad. The plaintiff claimed and offered evidence to prove that they so escaped in consequence of the act of a trespasser in letting down his fence, and without any fault on his part. The defendants on the contrary claimed that their escape was owing wholly to the insufficiency of the plaintiff's fence, and that consequently his negligence in not properly confining his cattle had substantially contributed to the injury. The plaintiff introduced evidence to prove that the fence in question was well and

substantially erected, partly of stone about three feet, and partly of stakes and poles, making the entire erection about four feet high, and was in good condition and adequate to restrain the cattle. On the cross-examination of one of the plaintiff's witnesses, who had testified to the above, the defendants' counsel inquired if the witness had measured the height of the fence; to which he replied that he had not. The counsel then proposed to ask the witness what was the character, height and condition of a certain other fence, on the opposite side of the highway, for the purpose of instituting, by this witness, in connection with other witnesses, a comparison between said fence and the fence of the plaintiff, in order thereby to show the actual character, height and condition of the latter. To this inquiry, for the purpose proposed, the plaintiff objected, on the ground that it was irrelevant, and tended to raise a collateral issue. The court sustained the objection, and refused to permit the inquiry to be made. Subsequently the defendants introduced direct evidence of persons who had seen the plaintiff's fence, tending to show what were its actual character, height and condition at the time in question, and that it was insufficient and not well and substantially erected.

For the purpose of proving the existence, at the time in question, of the by-law set up in their notice, the defendants offered in evidence a copy of the same and of the record of the town meeting at which it was passed, from the town records of the town of Milford, duly certified by the town clerk of said town, accompanied with proof of the publication of the by-law four weeks successively in a newspaper generally circulated in said town, but offered no other proof thereof, or of the warning of the town meeting at which it was passed. This evidence was received subject to any objections which might exist against its admissibility; and the plaintiff subsequently requested the court to charge the jury, that standing by itself it did not prove the existence of the by-law.

The court in its charge directed the jury to lay the evidence out of the case, as in the opinion of the court it did

Isbell *v*. New York and New Haven Railroad Company.

not sufficiently appear from the record that the town meeting at which the by-law was passed was legally warned for that purpose.[*]

The record of the vote of the town establishing the by-law, was preceded on the town records, by the following record of the meeting by the clerk, which was also embraced in the copy offered in evidence on the trial.

" At a special meeting of the inhabitants of the town of Milford, legally warned and held at the town hall on the 25th day of July, 1853, for the purpose of making a by-law for the purpose of restraining neat cattle, horses, and horse kind, sheep and geese, from going at large on the highways and commons of said town :

" John K. Bristoll, Moderator; David L. Baldwin, Clerk.

" Voted, &c."

The by-law provided that any cattle &c., found going at large without a keeper on any highway, common, or unenclosed land in the town of Milford, might be lawfully impounded and that the owner should pay a fine of twenty-five cents for every beast so impounded, with a proviso that no single penalty should exceed four dollars.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial for error in the rulings of the court. Various other exceptions were taken, which, in the result at which the court arrived, it is not necessary to notice.

*R. I. Ingersoll* and *Dutton,* in support of the motion.

1. The statute having prescribed the structure and height

---

[*] The statute which authorizes towns to pass by-laws on the subject, is as follows. " Every town at a lawful meeting warned for that purpose, shall have power to make by-laws for restraining horses, cattle, asses, mules, swine, sheep and geese from going at large, and for regulating such as shall go at large ; provided that no penalty for any breach of such by-law shall exceed three dollars ; and that such by-laws shall not be in force till published four weeks successively in a newspaper published in such town or in the town nearest to such town in which a newspaper is published, or in some other newspaper generally circulated in the town where such by-law is made, as the town shall direct." Rev. Stat., tit. 3, sec. 30.

of a sufficient fence, [Rev. Stat., tit. 15, sec. 1,] it became material to ascertain as nearly as possible the structure and height of the fence around the plaintiff's enclosure, from which the cattle had strayed. The witnesses introduced by the plaintiff to prove the sufficiency of this fence, never having measured it to ascertain its height, the point was left in doubt. It was for the purpose therefore of bringing the evidence nearer to the exact point here in issue, and that the jury might the better judge of the sufficiency of the fence, that the defendants proposed to ask the witness on his cross-examination, how it compared in structure and height with another fence in the same vicinity, the condition and height of which the defendants had ascertained and were prepared to prove.

2. The court should have admitted the certified copy of the town records to prove the by-law. The record itself shows *prima facie,* that the town meeting was specially warned and held for the purpose of passing the law. It obviates the difficulty that the case of *Hayden* v. *Noyes,* 5 Conn., 391, presented, and has all the requirements indicated by the court in *Willard* v. *Killingworth,* 8 Conn., 247, where the court say, " It must appear, that the meeting of the town had been specially warned for the purpose; and this not appearing on the doings of the town in this case, nor from any proof *aliunde* to establish the fact, the judgment is erroneous. Perhaps it should appear on the face of the proceedings, &c." The penalty is twenty-five cents for each creature found at large. This is clearly within the statute limit, fixed and determinate. And the subsequent provision that no penalty shall exceed four dollars, is immaterial ; even if this part of the law is void, the others are good. A law may be void in part and valid in part. *Fisher* v. *McGirr,* 1 Gray, 1. See also, Am. Law Reg., for February, 1857, p. 214. The evidence thus excluded was not only important to the defendants on the question, whether the cattle were trespassing on the railroad track, but also in reference to the care required of the defendants in running their trains.

*Harrison* and *Watrous*, contra.

1. The question "what was the character, &c., of a certain other fence" (not in dispute) was proposed for the avowed and single purpose of "instituting a comparison" between the fence in dispute and the fence not in dispute. It was properly objected to, as not admissible "for the purpose proposed." 1st. The question was an inquiry, not into the comparative character of the two fences, but into the positive character of the fence not in dispute. Proof of the positive character of a fence not in dispute, could of itself throw no light upon the character of the fence in dispute; certainly not until the comparative characters of the two had been ascertained. No question was put or evidence given, in any part of the case, tending to ascertain the comparative characters of the two fences. Hence the proposed question stands upon this record as an isolated, unconnected inquiry into the character of a fence which had nothing to do with the case. 2d. If the question had been put, (as it was not) for the purpose of establishing a basis of comparison between the fence in dispute and a fence not in dispute, it would still have been inadmissible. Firstly, as opening the door to numberless collateral issues. If the defendants could put in issue the character of a second fence, the plaintiff for a similar purpose could have put in issue the character of a third fence, and so on. In the next place, as a surprise upon the plaintiff. The defendants, without notice to the plaintiff, selected as their basis of comparison, a fence in Milford. On the same principle they might have selected a fence in Litchfield. The plaintiff could not, without notice, be expected to come prepared for the trial of an issue thus arbitrarily made. 3d. The defendants can not have been injured by the rejection of this testimony. Indirect and vague at best, it would have had no effect except in the absence of direct and positive evidence. But the defendants subsequently introduced direct and positive evidence on the same point. *Kelsey* v. *Hanmer*, 18 Conn., 311. *Cowles* v. *Coe*, 21 Conn., 220.

2. The evidence offered in relation to the by-law was properly excluded. 1st. There was no evidence that the meet-

ing which passed the supposed by-law was ever warned at all; certainly none that it was warned according to law. 2d. No excuse was proved or suggested for the non-production of such evidence by the defendants, although, if the meeting was ever warned, a copy of the warning could have been produced from the very records from which the copy of the pretended by-law was taken. Rev. Stat., tit. 3, sec. 19. *Hayden* v. *Noyes*, 5 Conn., 391. *Willard* v. *Killingworth*, 8 Conn., 247. *Higley* v. *Bunce*, 10 Conn., 436. 3d. The supposed by-law was void on its face, for attempting to authorize a fine of four dollars. Rev. Stat., tit. 3, sec. 30.

3. But the by-law, if proved, was inadmissible. 1st. It did not tend to show that the plaintiff's fence was insufficient, the only negligence with which the plaintiff was charged by the defendants. 2d. It did not tend to prove that the defendants were careful in running their train, the only other point made by the defendants in this part of the case.

ELLSWORTH, J. Several questions have been discussed which we have no occasion to decide and shall pass them, confining ourselves to two objections which are decisive against the correctness of the judgment below.

And the first is, that the judge ruled that the defendant's counsel should not inquire of the plaintiff's witness the character, height and condition of a certain fence. The witness had testified in chief that the plaintiff's lot was inclosed by a fence, well and substantially erected, partly of stakes and poles and partly of stones, but he knew not its height, having never measured it. Upon his cross-examination he was inquired of, how the fence in the above particulars compared with another which stood close by on the other side of the highway. The judge, on objection taken, ruled that the inquiry was irrelevant and would raise a collateral issue and rejected it. We think that he erred in so ruling.

Testimony is not irrelevant because it is comparative. This may be and often is the very best and only evidence the case admits of; and if otherwise, yet, it may be entirely appropriate and satisfactory. The judge will see that the in-

quiry is properly restricted, and put in the proper stage of the trial, and then there is no danger of its leading to any abuse, or raising unnecessary and collateral issues.

Suppose we wish to know the height of a building, may we not compare it with a building or tower near by, the height of which has been measured and is known ? So the quality or durability of materials, wood, marble, stone and iron, may be ascertained by comparison ; so also the capacity and adaptedness of machinery or mechanics' tools. Indeed, much of all that testimony which is derived from analogy or experience, is of this nature. If the inquiry is kept within reasonable bounds, this is satisfactory testimony, and just such as governs mankind in the daily transactions of life. In this view of the evidence, we think the inquiry was proper, and that the court erred in holding otherwise.

As to the by-law of the town of Milford, we think it should not have been rejected because of the want of proof *aliunde* that the town meeting was warned specially for that purpose. Such warning may be necessary and we believe it is, but we think the record of the town clerk is *prima facie* evidence that the meeting was so warned, for he declares that fact in the record of the meeting and of the very vote itself, and he is a sworn officer to keep the record truly, as he undoubtedly did in this instance. The language is, " at a special meeting of the inhabitants of the town of Milford, warned and held for the purpose of making a by-law," &c. He had the evidence before him, and could certify to the fact as it was better than any other person. It was his duty to record the fact if it was so ; and although it may be true that he makes a record of a fact which precedes the action of the meeting, and is not strictly the act of the meeting, still it is a part of the proceedings which he is officially to notice and duly to enter of record. The moderator might have been appointed, as is usually the case, before the clerk, but the clerk can make a record of the appointment; and so of his own appointment and of his taking the oath required by law. This point was decided in the case of *Willard* v. *Killingworth Manuf. Comp.*, 20 Conn., 457, where the clerk of a corporation recorded his

own resignation after he had resigned. The principle adopted there is strictly applicable here.

If then it is proper for the town clerk to make the record in the manner he has done in this instance, the record may be received as presumptive evidence of the truth of the fact; and hence we decide that the by-law should not have been rejected for the want of evidence *aliunde,* as to the legal warning of the town meeting.

The case of *Hayden* v. *Noyes,* 5 Conn., 291, and *Willard* v. *Killingworth Borough,* 8 Conn., 250, which have been pressed upon us, as conclusive in the defendants' favor, contain no doctrine inconsistent with what we have stated. The first of these cases does not raise the present question at all, and the second one, so far as it goes, seems to favor the doctrine we have laid down. In *Hayden* v. *Noyes,* the question was, whether a warning for an annual meeting and " to do other business then thought proper by said meeting," was sufficient to render it legal to transact any special business not named. This question arose on demurrer and the court held the notice insufficient. In *Willard* v. *Killingworth Borough,* the question was, whether a bare naked vote of the town, a certified copy of which was produced, counting simply on a " legal" meeting, was *prima facie* evidence that the meeting had been specially warned to give its consent, as the law required it should do, to the passage of the by-law. The court held that such a vote was not proof of the necessary notice; but their language is to be remarked. They say, " the special warning not appearing on the doings of the town, it was not enough, and perhaps it should appear on the face of the proceedings." In the present case the records of the proceedings do show that a special warning was given. See further the case of *Brownell* v. *Palmer,* 22 Conn., 108.

For these reasons we advise a new trial.

In this opinion the other judges, Storrs and Hinman, concurred.

New trial advised.